OSCAR M. LEUS  CSBN 157650
OSCAR M. LEUS LAW CORPORATION
23517 South Main Street, Suite 107
Carson, CA 90745
Tel: 310-835-8259
Fax: 310-835-0538
Attorney for Debtor TSUTOMU WAKAI

**FILED**

**AUG 03 2011**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                          Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

In re:
TSUTOMU WAKAI, Debtor.
Movant,

Case Number: 2:11-bk-17014-VZ

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR VALUATION OF SECURITY, DETERMINATION OF SECURED STATUS, AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A., AND PERMISSION TO BE EXCUSED FROM MAKING FURTHER POST-PETITION MORTGAGE PAYMENTS TO RESPONDENT, J.P. MORGAN CHASE BANK, N.A., THE SECOND DEED OF TRUST HOLDER ONLY, ITS ASSIGNEES, TRANSFEREES AND/OR SUCCESSOR(S) IN INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS IN SUPPORT THEREOF**

**DATE:**  September 12, 2011
**TIME:**  11:00 A.M.
**CTRM:** 1368
**JUDGE:** VINCENT P. ZURZOLO

TO THE HONORABLE JUDGE VINCENT P. ZURZOLO, NANCY K. CURRY,

CHAPTER 13 TRUSTEE, J.P. MORGAN CHASE BANK, N.A., AND ALL OTHER

NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A.,

1

INTERESTED PARTIES:

PLEASE TAKE NOTICE that on September 12, 2011 at 11:00A.M., or as soon thereafter as the matter may be heard, in Courtroom 1368 of the above-entitled court, located at Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Courtroom 1368, Los Angeles, CA 90012, Debtor TSUTOMU WAKAI, through undersigned counsel, OSCAR M. LEUS, will move the Honorable Court for a valuation of security under Rule 3012 of the Federal Rules of Bankruptcy Procedure, determination of secured status under 11 United States Code § 506(a) and avoidance of lien and modification of the rights of lienholder under 11 United States Code §1322(b)(2).

This motion is based upon this notice, the attached memorandum of points and authorities, and Declaration of Debtor, TSUTOMU WAKAI (Pages 11-12), and Declaration of SHARI HILL, a California Licensed Real Estate Appraiser (Pages 13-14) as well as the records and files in this action, and such other evidence as may be presented at the hearing on this matter.

Pursuant to Local Rules 9013-1(1)(g), any response to this motion shall be filed with the Clerk of the Court and served on all interested parties no later than fourteen (14) days prior to the above hearing date. Failure to do so may be deemed as a waiver of the objection to the foregoing.

Dated: July 28, 2011

OSCAR M. LEUS, ESQ.

Attorney for Debtors

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A.,**    2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

This case was commenced by the filing of a voluntary petition under Chapter 7 of the Bankruptcy Code (11 U.S.C.) on March 10, 2011 and upon motion of Debtor was converted to a Chapter 13 case on April 25, 2011 by order of this honorable court.  A primary asset of the bankruptcy estate is Debtor's real estate property, family residence, located at 14118 Orizaba Avenue, #7, Paramount, CA 90723-2698 ("subject property"), the property at issue in this motion.

At the commencement of the instant case, Debtor was indebted to WELLS FARGO HOME MORTGAGE, INC. (1ST TD), the beneficial holder of a promissory note secured by a First Trust Deed of trust, for an outstanding balance of approximately $190,931.06.00. This amount is inclusive of all outstanding pre-petition principal and interest arrears. Declaration of TSUTOMU WAKAI ("Declaration of Debtor") (Pages 11-12), concurrently filed and attached herein; see also WELLS FARGO HOME MORTGAGE, INC. (1ST TD)'s most current mortgage statement dated July1, 2011, attached herein as Exhibit 1 (Page 17).

Debtor is also indebted to J.P. MORGAN CHASE BANK, N.A., (2ND TD), the respondent and the beneficial holder of a promissory note secured by a second deed of trust. As of the date of the commencement of this case, Debtor was indebted to J.P MORGAN CHASE BANK, N.A., (2ND TD) for an outstanding balance of approximately $119,373.92. inclusive of outstanding pre-petition principal and interest arrears.  Declaration of Debtor (Pages 11-12);  see also J.P. MORGAN CHASE BANK N.A., (2ND TD)'s attached hereto as Exhibit 2 (Page 18), most current mortgage statement dated March 14, 2011.

NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN,
AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE
BANK, N.A.,

3

Both WELLS FARGO HOME MORTGAGE, INC. (1ST TD), and J.P. MORGAN CHASE BANK N.A., (2ND TD), the first and second position lenders, are, and have been at all times, secured by legally recorded deeds of trust, recorded against the subject property.

Currently, the fair market value ("FMV") of the subject property is approximately $140,000.00 which is $58,000.00 less than the total payoff balance owed to WELLS FARGO HOME MORTGAGE, INC. (1ST TD) as First Trust Deed holder. Please see Debtor's Declaration (Pages11-12); see also Declaration of SHARI L. HILL, California Licensed Real Estate Appraiser (Pages 13-14) concurrently filed and attached herein. Appraiser appraised the current fair market value of the subject property at $140,000.00 as of June 18, 2011. See SHARI L. HILL'S Report attached herein as Exhibit 3 (Pages 19-38).

II.    LEGAL DISCUSSION

A.    Debtor Seeks A Determination Of The Value Of The Subject Property.

A debtor may move the court for a determination of the value of a property in the bankruptcy estate pursuant to Federal Rules of Bankruptcy Procedure (FRBP) Rule 3012. FRBP provides in pertinent that:

> "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest, on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct."

FRBP Rule 3012

FRBP Rule 3012 implements §506(a) of the Bankruptcy Code with respect to valuation of a secured claim in order to determine the extent to which it is secured and the extent to which it is unsecured. The Debtor seeks to extinguish the claimant's lien to the extent permitted

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A.,**                                                                                              **4**

1

2    under Sections 506(a), 1322(b)(2) and 1325 as provided in the Debtor's most current Chapter
     13 Plan. See Exhibit 5 (Pages 40-49).

3

4    Further, <u>FRBP</u> Rule 1001 states that the bankruptcy rules "shall be construed to secure
     the just, speedy, and inexpensive determination of every case and proceeding." The

5    objective of "expeditious and economical administration" of cases under the <u>Bankruptcy</u>

6    <u>Code</u> has frequently been recognized by the courts to be a "chief purpose of the bankruptcy
     laws." <u>Katchen v. Land</u> (1966) 382 U.S. 323, 328.

7

8    Accordingly, Debtor TSUTOMU WAKAI requests this Court to determine the value of
     his family residence, the subject property, to be $140,000.00, which is in line with its current

9    fair market value. Please see Declaration of Debtor (Pages 11-12); see also Declaration of

10   Appraiser, SHARI L. HILL (Pages 13-14).

11   B.    Debtor Seeks A Determination Of the Extent Of J.P. MORGAN CHASE BANK,

12   N.A. (2ND TD)'s Secured Claim

13   Chapter 13 cases, such as the instant case, allow bifurcations of a claim into secured and
     unsecured portions. <u>Wilson v. Comonwealth Mortgage Corp.</u> (1990) 895 F.2d 123 (3rd Cir).

14   Further, 11 United States Code (U.S.C.) § 506, a section of general applicability, states in

15   relevant part as follows:

16
             "[a]n allowed claim of a creditor secured by a lien on a property in which the estate
17           has an interest…is a secured claim to the extent of the value of such creditor's
             interest in the estate's interest in such property…and [alternatively] is an unsecured
18           claim to extent that the value of such creditor's interest …is less than the amount of
             such allowed claim."

19   11<u>U.S.C.</u> §506(a)

20   In other words, Section 506(a) separates an under-secured creditor's claim into two

21   parts: a secured claim to the extent of the value of the collateral, and an unsecured claim for
     the balance of the claim. Additionally, subsection (d) of 11<u>U.S.C.</u> §506 states that, "To the

22   extent that a lien secures a claim against the debtor that is not an allowed secured claim, such

23   lien is void."

24

25   **NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN,**          5
     **AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE**
26   **BANK, N.A.,**

In the case at bar, the total of the first mortgage lien of WELLS FARGO HOME MORTGAGE, INC. (1ST TD), the First Trust Deed holder, is under-secured as the secured value is greater than the value of its security interest. Therefore, necessarily, the Second Trust Deed held by J.P. MORGAN CHASE BANK, N.A., is totally unsecured. As such, Debtor requests this Court to determine J. P. MORGAN CHASE BANK, N.A. (2nd TD)'s interest herein to be unsecured.

   C.  A Totally Unsecured Mortgage Lienholder's Rights May Be Modified Under 11 U.S.C. §1322 (b)(2).

      1.   Modification is Permissible under 11 U.S.C. §1322 (b)(2).

A loan which has fully matured prior to the filing of the Chapter 13 petition, or loan which matures during the life of the Chapter 13 plan, may be paid through the plan. Further, Section 1322(b)(2) of the Bankruptcy Code allows a debtor's Chapter 13 plan to modify the rights of secured claims other than claims totally secured by an interest in real property that is the debtors' principal residence. 11 U.S.C. §1322 (b)(2) provides in relevant part as follows:

> "The plan may...
> (b)(2) modify the rights of holders of secured claims, other than a claim secured by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

11 U.S.C. §1322 (b)(2). This section, especially when read in light of Section 506(a), supra, does not preclude modification by a Chapter 13 Plan of the rights of holders of unsecured claims' i.e., junior mortgages which are completely unsecured. In this case, the loan by J. P. MORGAN CHASE BANK, N.A. (2ND TD) had fully matured prior to Debtor's filing of his bankruptcy petition. Further, J. P. MORGAN CHASE BANK, N.A. (2ND TD)'s junior lien claim is wholly unsecured. As such, J. P. MORGAN CHASE BANK, N.A. (2ND TD)'s lien may be modified.

      2.   Protections afforded secured claimants in the case of Nobleman v. American Savings Bank are inapplicable to the case at bar

Protections otherwise afforded claimants by the case, Nobleman v. American Savings Bank (1993) 113 S.Ct. 2106, are inapplicable here as the senior lien of WELLS FARGO

HOME MORTGAGE, INC. (1ST TD) is far in excess of the current fair market value of the subject property. Under Nobleman, a lien cannot be stripped if any portion of the interest was secured. Thus, by implication, when a lien is wholly unsecured, it can be stripped. Courts have consistently distinguished between Nobleman and facts involving a wholly unsecured lien holder. In fact, most reported decisions have rejected the proposition that Nobleman prohibits modification of a totally unsecured lien on a chapter 13 debtor's principal residence. These Courts, along with the 9th Circuit Bankruptcy Appellate Panel, interpret Nobleman to require the existence of an allowable secured claim as the predicate for the protection from modification in U.S.C. §1322(b)(2).

In the 9th Circuit Bankruptcy Appellate Panel Case of In re Lam (1997) 121 B.R. 36 (9TH Cir. B.A.P.), the Court Held that:

> The Nobleman decision holding that section 1322(b) bars chapter 13 plan from modifying the rights of holders of claims secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extension of the protections of the section 1322(b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing dischargeability of unsecured claims.

In re Lam at 41 (emphasis added).

Similarly, In re Geyer (1996) 203 B.R. 726 (S.D. Cal.) sustained the debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d), holding that a Chapter 13 debtor may strip a lien on the debtor's primary residence when the lienholder's interest is totally unsecured. The Geyer court stated that:

> [T]he term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protection against modification contained is section 1322 (b)(2). A chapter 13 debtor may 'strip-off' a lien on his or her primary residence under the plan or under section 506(d) when the lien holder's interest is totally unsecured.

In re Geyer, 203 B.R. 726, 729 (S.D. Cal. 1996)

In the case at bar, the real property to be retained in the Chapter 13 Plan is Debtor's real estate family residence. The value of the subject property is only $140,000 while the

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A.,**

value of the first deed of trust held by WELLS FARGO HOME MORTGAGE, INC. is at least $198,000.00. See Declaration of Debtor (Pages 11-12); see also Appraiser's declaration (Pages 13-14). As such, Respondent J. P. MORGAN CHASE BANK, N.A. (2ND TD) possesses a totally unsecured lien on the debtor's real estate family residence and does not have an allowable secured claim. Accordingly, J. P. MORGAN CHASE BANK, N.A. (2ND TD) cannot seek protection from modification under 11 U.S.C. §1322 (b)(2) and Debtor may modify the claim and avoid J. P. MORGAN CHASE BANK, N.A. (2ND TD)'s lien.

J. P. MORGAN CHASE BANK, N.A. (2ND TD)'s secured interest on the second deed of trust is zero since there is no equity to which the second deed of trust can attach. Therefore, the second deed of trust should be extinguished, reconveyed, and treated as unsecured for the purposes of the instant Chapter 13 proceeding.

Moreover, in Nobleman, Justice Thomas held that Bankruptcy Code Section 1322(b)(2) prohibits splitting an under-secured home mortgage holder's claim into its secured and unsecured portions for purposes of confirmation of a Chapter 13 Plan. Nobleman, 113 S.Ct. 2106. Unlike the case at bar, in Nobleman, the lien to be stripped was the holder of the first deed of trust for $71,335.00, and the debtor's principal resident was worth $23,500.00. Thus, the bank's claim was at least partially secured by the debtor's home. In the case at bar, the lien to be voided is not the first but the second deed of trust. Further, there can be no reasonable contention that any part of the second deed of trust is secured. Thus, the facts, reasoning and holding of Nobleman are inapplicable to the case at bar. Because claimant possesses a totally unsecured lien on the debtor's home and does not have an allowable secured claim, claimant cannot seek protection from modification under 11 U.S.C. Section 1322(b)(2) and the debtor may modify the claim and avoid claimant's lien.

3.     Dewsnup v. Timm is distinguished from lien stripping in the instant case

The Chapter 7 case of Dewsnup v. Timm 112 S.Ct 773 (1992) has no application to this Chapter 13 case. Justice Scalia, in his dissent in Dewsnup, points out the difference between Chapter 7 and Chapter 13 lien stripping, stating that:

1

2   "Respondent assume…that a debtor in a Chapter 13 cannot strip down a
mortgage placed on the debtor's home…but that assumption may beg the very
3   question the Court answers today. True, Section 1322(b)(2) provides that
Chapter 13 filers may not "modify the rights of secured claims", secured only
4   by a security interest in real property that is the debtor's principal residence.
But this can be and has been read, in light of Section 506(a), to prohibit
5   modification of the mortgagee's rights only with respect to the operation of
his claim that is deemed secured under the Code."

6   Dewsnup (1992) 112 S.Ct. 773, 784 (emphasis added).

7
    Dewsnup was discussed at length in Denver v. Internal Revenue Services, (1994) 164
8   B.R. 132 (C.D. Cal.). Judge Fenning in Denver discussed the issue of lien stripping in

9   Chapter 13 cases, stating that:

10  "The dispositive issue in this case is whether Eastland's undersecured loan
may be bifurcated into two claims by applying general principals of Section
11  506(a) to the mortgage and the protecting only the secured claim by
provisions Section 1322(b). We believe it can."

12  Denver citing In re Hart 923 F.2d 1410, 1413 (10th Cir. 1991).

13
    After citing In re Hart, the Denver court went on  to the state that:
14  "If Section 506 does not permit debtors to bifurcate under-secured claims and
strip down liens to their collateral value, then all secured creditors would be
15  freed of any concern that debtors could reduce the amount of their lien while
retaining property. If Congress did not intend to allow lien stripping in general
16  in Chapter 13 cases, then why would it bother to draft the exclusionary
language of Section 1322.  As Justice Steven's concurring opinion in
17  Nobleman emphasized, the legislative history of Section 1322(b)(2) reflects
Congressional desire to provide special protections to residential lenders."

18  Denver v. IRS at 141.

19
    Here, Debtor filed a Chapter 13 voluntary petition. The real property to be retained in
20  the Chapter 13 Plan is Debtor's real estate family residence.  The value of the subject

21  property is $140,000.00 while the value of the first deed of trust held by WELLS FARGO

    HOME MORTGAGE, INC. (1ST TD) is at least $190,931.06. Debtor's Declaration (Pages
22  11-12); see also Appraiser's Declaration (Pages 13-14).  Second Trust Deed holder, J. P.

23  MORGAN CHASE BANK, N.A. (2ND TD) possesses a totally unsecured lien on debtor's

24  real estate family residence and does not have an allowable secured claim.  Accordingly, J. P.

    MORGAN CHASE BANK, N.A. (2ND TD) cannot seek protection from modification under
25  **NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN,**                  **9**
    **AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE**
26  **BANK, N.A.,**

11 U.S.C. Section 1322 (b)(2) and Debtor may modify the claim and avoid J. P. MORGAN CHASE BANK, N.A. (2ND TD)'s lien. The second deed of trust should be extinguished, reconveyed, and treated as unsecured for purposes of the instant Chapter 13 proceeding.

III.    CONCLUSION

WHEREFORE, based on the foregoing statutory and decisional authority, the debtor respectfully requests that the Court grant this motion and issue an order that the Second Deed of Trust held by J. P. MORGAN CHASE BANK, N.A. (2ND TD) is ordered extinguished and reconveyed upon the successful completion of the debtor's Chapter 13 plan subsequent Chapter 13 discharge, and deemed an unsecured claim in the instant proceeding and that the debtor be excused from making further payments under Second Trust Deed's holder's note.

Dated: July 28, 2011

Respectfully submitted,

OSCAR M. LEUS, ESQ. SBN157650
Attorney for:

TSUTOMU WAKAI, Debtor

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# DECLARATION

# TSUTOMO WAKAI

# DECLARATION OF DEBTOR

I, TSUTOMU WAKAI, declare:

1.  I know the following facts to be true from my own personal knowledge, except those facts which are stated on information and belief and as to those facts I believe them to be true. I could and would competently testify under oath to the truthfulness of the following facts.

2.  I am the debtor in the Chapter 13 Bankruptcy case, Case Number 2:11-bk-17014-VZ.

3.  I am the owner of the property located at, 14118 Orizaba Avenue, #7, Paramount, CA 90723-2698 the "subject property".

4.  The First Trust Deed on the subject property currently held by WELLS FARGO HOME MORTGAGE, INC. (1st TD) under Loan Number 0055922629 is secured by a First Trust Deed of Trust document originally recorded in the Los Angeles County recorder office with number 93 1162013, on June 18, 1993.  WELLS FARGO BANK'S most current monthly statement reflects a total payoff balance of $190,931.06 as of the date of filing.  See Exhibit 1 (Page 17).  WELLS FARGO HOME MORTGAGE, INC. (1ST TD)'s most current statement dated.  I concur with this figure.

5.  The Second Deed of Trust on the subject property, currently held by J.P. MORGAN CHASE BANK, N.A., (2ND TD), is secured by a Second Deed of Trust document recorded in the Los Angeles County Recorder Office with number 20080076595, on 01/14/2008 at 02:59 PM, under Loan Number 0754441467. J.P. MORGAN CHASE BANK, N.A., (2ND TD)'s most current statement reflects a total payoff balance of $119,373.92 as of March 14, 2011. See Exhibit 2 (Page 18).

6.  On or about June 18, 2011, I retained the services of a California licensed real estate appraiser, SHARI L. HILL for the purpose of ascertaining the current fair market value of the subject property.  SHARI L. HILL appraised the subject property at $140,000.00 as of June 18, 2011. Attached herein as Exhibit 3 (Pages 19-38), is a true and correct copy of Appraiser SHARI L. HILL'S Appraisal Report.  I believe the appraised value is correct based on my knowledge of the property and of local market conditions.

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A.,**   **11**

7. Given the value reflected in the appraisal report, I filed my most current Schedule "A" where I estimated that the fair market value of the subject property to be $145,000.00. A true and correct copy of my most current Schedule "A" is attached and incorporated by reference herein as Exhibit 4 (Page 39). I based this number on internet appraisals which is $5,000.00 higher than the appraisal done on my property on June 18, 2011 by SHARI L. HILL, a licensed California appraiser.

8. As a result, I believe that J.P. MORGAN CHASE BANK (2ND TD)'s claim is wholly unsecured and subject to avoidance upon completion of my proposed Chapter 13 Plan. Accordingly, I am respectfully requesting the court to determine the value of the subject property and the secured claims of the Respondent's claim to be wholly unsecured and subject to avoidance upon completion of my proposed Chapter 13 Plan.

9. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed at Carson, California on July 28, 2011 Carson, California.

TSUTOMU WAKAI (Debtor)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# DECLARATION

# SHARI HILL

23
24
25
26

# DECLARATION OF APPRAISER

I, SHARI L. HILL declare:

1.    I hold a California Real Estate Appraiser License, License Number AL034647 and am a professional in good standing.  I make this declaration based upon my own personal, firsthand knowledge, my education, training and experience in the field of real estate appraisal and if called as a witness, I could and would competently and truthfully testify thereto.  I was retained by TSUTOMU WAKAI on June 18, 2011 to examine and appraise his family residence located at 14118 Orizaba Avenue, #7, Paramount, CA 90723-2698.

2.    My main and only service is to prepare appraisals for real estate properties in California, of which I perform approximately three (3) to eight (8) residential appraisals per month.

3.    On June 18, 2011, I had occasion to conduct an appraisal of the subject property for TSUTOMU WAKAI.  Attached and incorporated by reference herein as Exhibit 3 (Pages 19-38) is a true and correct copy of the June 18, 2011 appraisal Report I prepared.

4.    In preparing the Appraisal Report, I performed market research, inspected the subject property, both interior and exterior, measured the subject property to determine the square footage, and surveyed the immediate neighborhood.

5.    In determining the fair market value for the subject property, I used both the sales comparison approach and the cost approach, with the greater weight given to the sales comparison approach.  I consider the sales comparison approach to be most reliable in determining the fair market value because it more accurately simulates buyers' perceptions and actions.

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN,**     13
**AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE**
**BANK, N.A.,**

6. Based upon my observations, inspection of the subject property, and market research as well as my training, education and experience as a residential appraiser, it is my professional opinion that the subject property has a fair market value of $140,000.00 as of June 18, 2011.

7. I have no present or contemplated future interest in the subject property described in the Appraisal Report. Neither my employment nor my compensation for this appraisal is contingent upon the value found.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed on July 6, 2011 at Carson, California.

07/06/2011

SHARI L. HILL, California Licensed Appraiser

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A.,**    **14**

# PROOF OF SERVICE

**STATE OF CALIFORNIA** )
                           ) ss.
**COUNTY OF LOS ANGELES** )

I am employed in the aforesaid county; I am over the age of eighteen years and not a party to the within entitled action.

BY MAIL: I deposited a true copy of the **NOTICE OF DEBTOR'S MOTION AND MOTION FOR VALUATION OF SECURITY, DETERMINATION OF SECURED STATUS, AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A., AND PERMISSION TO BE EXCUSED FROM MAKING FURTHER POST-PETITION MORTGAGE PAYMENTS TO RESPONDENT, J.P. MORGAN CHASE BANK, N.A., THE SECOND DEED OF TRUST HOLDER ONLY, ITS ASSIGNEES, TRANSFEREES AND/OR SUCCESSOR(S) IN INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS IN SUPPORT THEREOF** in the United States mail in a sealed envelope with postage fully prepaid.  The envelope was addressed as follows:

Please See Attached Mailing List

Date of mailing: August 3, 2011
Place of mailing: 23517 s. Main St., #107, Carson, CA 90745

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on: August 3, 2011

_Chona Marie R. Leus_
CHONA MARIE R. LEUS

---

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN,**   **15**
**AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE BANK, N.A.,**

1

2

**MAILING LIST**

3

HONORABLE VINCENT P. ZURZOLO
Chief Judge

4

255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

5

U.S. TRUSTEE REGION 16 (LA)
725 S. Figueroa Street, 26th Floor

6

Los Angeles, CA 90017

7

NANCY K. CURRY, TRUSTEE
606 South Olive Street, Suite 950

8

Los Angeles, CA 90014

9

CORPORATION SERVICE COMPANY
DBA: CSC - LAWYERS INCORPORATING SERVICE

10

Agent for Service of Process of:
WELLS FARGO HOME MORTGAGE, INC.

11

2730 GATEWAY OAKS DR STE 100
SACRAMENTO CA 95833

12

13

C T CORPORATION SYSTEM
Agent for Service of Process of:
JP MORGAN CHASE BANK, N.A.

14

818 W SEVENTH ST
LOS ANGELES CA 90017

15

16

SHERMETA, ADAMS & VON ALLMEN, P.C.
Servicing Agents For:
J.P. MORGAN CHASE BANK, N.A.

17

P.O. BOX 80908
ROCHESTER HILLS, MI 48308

18

19

TSUTOMU WAKAI
14118 Orizaba Avenue, #7
Paramount, CA 90723

20

21

OSCAR. LEUS, ESQ.
23517 S. Main Street, Suite 107
Carson, CA 90745

22

23

24

25

**NOTICE OF DEBTOR'S MOTION AND MOTION FOR AVOIDANCE OF LIEN,     16
AND MODIFICATION OF RIGHTS OF LIENHOLDER J.P MORGAN CHASE
BANK, N.A.,**

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT 1

**WELLS FARGO HOME MORTGAGE**

Return Mail Operations
PO Box 14411
Des Moines, IA 50306-3411

## For Informational Purposes

1AT        2643/020956/003515 072 01 AGNZ56 708

TSUTOMU WAKAI
ELISA E WAKAI
14118 ORIZABA AVE 7
PARAMOUNT CA 90723-2698

*NOTE: THIS IS THE LATEST*
*Statement, I*
*received 7/9/11.*
*this statement is*
*toward Aug./2011*

### Monthly Mortgage Statement

| | |
|---|---|
| Statement Date | 07/01/11 |
| Loan Number | 0055922629 |

Property Address
14118 ORIZABA AVE   7
PARAMOUNT CA 90723

### Customer Service 📶 Online
wellsfargo.com/ym

📠 **Fax**
(866) 278-1179

**Correspondence**
PO Box 10335
Des Moines IA 50306

✉ **Payments**
PO Box 30427
Los Angeles CA 90030

☎ **Telephone**
(800) 274-7025

**Hours of Operation**
Mon - Fri, 8 AM - 5 PM CT

**TTY Deaf/Hard of Hearing**
(800) 934-9998

### Important Messages

**DISASTER PREPARATION**
Our disaster assistance line is here
to help if you are ever affected by a
disaster such as a fire, flood, or storm.
If needed, please contact a customer service
representative at the number above.

This statement is for informational purposes
only. Our records indicate that your loan is
subject to bankruptcy. The attached coupon
reflects the calendar due date, not the
contractual due date of the bankruptcy case. If
you have any questions regarding your loan,
please contact your bankruptcy attorney or our
office.

## Summary

| | |
|---|---|
| Payment (Principal and/or Interest, Escrow) | $1,567.15 |
| Optional Product(s) | $0.00 |
| **Current Monthly Payment** | **$1,567.15** |
| Overdue Payments | $0.00 |
| Unpaid Late Charge(s) | $0.00 |
| Other Charges | $0.00 |
| **TOTAL PAYMENT 08/01/11** | **$1,567.15** |

| | |
|---|---|
| Unpaid Principal Balance | $189,944.92 |
| *(Contact Customer Service for your payoff amount)* | |
| Interest Rate | 2.000% |
| Interest Paid Year-to-Date | $1,933.88 |
| Taxes Paid Year-to-Date | $932.63 |
| Escrow Balance | $693.44 |

## Activity Since Your Last Statement

This statement is for informational purposes only and is being provided as a courtesy should you voluntarily
decide to make your loan payments. This statement should not be construed as an attempt to collect a debt or
a demand for payment contrary to any protections you may have received pursuant to your bankruptcy case.

If you have received a discharge, and the loan was not reaffirmed in the bankruptcy case, we will only
exercise our rights as against the property and we are not attempting any act to collect the discharged debt
from you personally.

If your Plan requires you to make regular post-petition mortgage payments directly to the Bankruptcy Trustee,
and you chose to maintain your mortgage payment, any payment should be remitted to the Trustee or
otherwise in accordance with the Plan you filed with the Bankruptcy court.

| Date | Description | Total | Principal | Interest | Escrow | Other |
|------|-------------|-------|-----------|----------|--------|-------|
| 07/01 | Payment | $1,567.15 | $986.14 | $318.22 | $262.79 | |

020956/003515 AGNZ56 2643 ETM1C004  1

---

**WELLS FARGO HOME MORTGAGE**

| | |
|---|---|
| Loan Number | 0055922629 |
| **Total Payment** | **$1,567.15** |

*Check here and see
reverse for address
correction.*

TSUTOMU WAKAI
ELISA E WAKAI
2643/020956/003515 072 01 AGNZ56 708

WELLS FARGO HOME MORTGAGE
PO BOX 30427
LOS ANGELES CA 90030-0427

Please specify
additional funds.
Any additional
funds not
specified will be
applied first to
any outstanding
charges.

| | | |
|---|---|---|
| Monthly Payment | A | $ |
| x pmt amt | | |
| Additional Principal | B | $ |
| Late Charges | C | $ |
| Other Charges | D | $ |
| Additional Escrow | E | $ |
| Total Amount Enclosed | F | $ |
| (Please do not send cash) | | |



708 0055922629 8 100001567150163237015671500000000 0000000068554171Γ93 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT 2

SHERMETA, ADAMS & VON ALLMEN, P.C.
LICENSED TO PRACTICE LAW IN MICHIGAN AND OHIO ONLY
AGENTS FOR J.P. MORGAN CHASE BANK, N.A.
P.O. BOX 80908
ROCHESTER HILLS, MI 48308
(855) 824-1000

MARCH 14, 2011

OSCAR M LEUS
23517 MAIN ST STE 107
CARSON, CA  90745

NAME: TSUTOMU WAKAI
CASE NO: 1117014
ACCOUNT NO: ******1467
SA&V FILE NO: 252459
LIEN HOLDER:
J.P. MORGAN CHASE BANK, N.A.

PROPERTY ADDRESS:
14118 ORIZABA AVE APT 7
PARAMOUNT, CA 90723

Dear OSCAR M LEUS:

Please be advised that Shermeta, Adams & Von Allmen, P.C.
has been contracted by J.P. Morgan Chase Bank, N.A. to be their
servicing agent as to the above referenced property.

The purpose of this letter is to determine your client's intentions
relating to the lien held on this property. In an attempt to assist
your client with paying off the balance of their mortgage indebtedness
the lien holder is extending the opportunity for your client to
reaffirm this obligation for $119,373.92 at 0.00% interest to be
paid over the remaining term of the original contract. Please be aware
that if your client does not reaffirm the debt owed to the lien holder,
their lien on the property will survive the bankruptcy.

Additionally, if your client would like to discuss this opportunity
or other settlement options regarding their mortgage indebtedness,
please contact our office. Furthermore, if your client no longer has
an ownership interest in the property, please call our office.

Very truly yours,
Biana Hamady

NOTICE: We acknowledge that your client is under the protection
of the United States Bankruptcy Code. We do not intend  by this
letter to make a demand for collections. This notice is sent to
determine your client's intentions as to the lien on the above
referenced property.

RECEIVED MAR 24 2011
FAXED 1:53 CLIENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT 3

25
26

| Project Name | N/A | | | | Phase 2 | Map Reference | 735-H3 | | Census Tract | 5535.01 |

| Occupant | X | Owner | | Tenant | | Vacant | | Special Assessments $ | N/A | HOA $ | 150 | | per year | X | per month |

| Property Rights Appraised | X | Fee Simple | | Leasehold | | Other (describe) |

| Assignment Type | | Purchase Transaction | | Refinance Transaction | X | Other (describe) | ASCERTAIN MARKET VALUE |

Lender/Client  WAKAI                Address  14118 ORIZABA AVENUE 7, PARAMOUNT CA 90723

| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? | | Yes | X | No |

Report data source(s) used, offerings price(s), and date(s).  PUBLIC RECORDS

| I | | did | | did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. |

| Contract Price $ | | Date of Contract | | Is the property seller the owner of public record? | | Yes | | No | Data Source(s) |

| Is there any financial assistance (loan charges, sale concessions, gift or down payment assistance, etc.) to be paid by any party on behalf of the borrower? | | Yes | | No |

If Yes, report the total dollar amount and describe the items to be paid.  N/A

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Location | | Urban | X | Suburban | | Rural | | Property Values | | Increasing | X | Stable | | Declining | PRICE | AGE | One-Unit | 85 | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Built-Up | X | Over 75% | | 25-75% | | Under 25% | | Demand/Supply | | Shortage | X | In Balance | | Over Supply | $ (000) | (yrs) | 2-4 Unit | 5 | % |
| Growth | | Rapid | X | Stable | | Slow | | Marketing Time | | Under 3 mths | X | 3-6 mths | | Over 6 mths | 98 | Low | 5 | Multi-Family | 5 | % |

Neighborhood Boundaries  THE SUBJECT AREA IS LOCATED NORTH-105 FWY., SOUTH-ROSECRANS AVE.,

| EAST-LAKEWOOD BLVD., WEST-GARFIELD AVE. | | | 530 | High | 80 | Commercial | 5 | % |
| | | | 145 | Pred. | 25 | Other | 0 | % |

Neighborhood Description  SUBJECT NEIGHBORHOOD HAS AVERAGE ACCESS TO EMPLOYMENT AND ALL SUPPORT SERVICES (SHOPPING, SCHOOLS,
POLICE/FIRE, AND RECREATIONAL FACILITIES.  AREA HAS AVERAGE EMPLOYMENT STABILITY, AND OVERALL AVERAGE APPEAL TO THE MARKETPLACE.  NO
SIGNIFICANT NEGATIVE FACTORS THAT AFFECT THE MARKETABILITY OF THE PROPERTIES IN THE NEIGHBORHOOD WERE NOTED.

Market Conditions (including support for the above conclusions)  SUBJECT NEIGHBORHOOD APPEARS TO BE STABLE MARKET VALUES AND SUPPLY/DEMAND.
MARKETING TIMES FOR PROPERLY PRICED PROPERTIES APPEAR TO BE 3-6 MONTHS.  SALES FINANCING IS TYPICALLY CONVENTIONAL IN NATURE.

| Topography  LEVEL PAD | Size | CONDO | Density | TYPICAL FOR AREA | View | AVERAGE |

| Specific Zoning Classification  PARM* | Zoning Description  CONDOMINIUM |

| Zoning Compliance | X | Legal | | Legal Nonconforming - Do the zoning regulations permit rebuilding to current density? | | Yes | | No |
| | No Zoning | | Illegal (describe) |

| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? | X | Yes | | No If No, describe. |

| Utilities  Public | Other (describe) | | Public | Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | X | | | Water | X | | Street  ASPHALT | X | |
| Gas | X | | | Sanitary Sewer | X | | Alley  NONE | | |

| FEMA Special Flood Hazard Area | | Yes | X | No  FEMA Flood Zone | X500L | FEMA Map # | 0650491820F | FEMA Map Date | 09/26/2008 |

| Are the utilities and/or off-site improvements typical for the market area? | X | Yes | | No If No, describe. |

| Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? | | Yes | X | No If Yes, describe. |

Data source(s) for project information  PUBLIC RECORDS, MLS

| Project Description | | Detached | X | Row or Townhouse | | Garden | | Mid-Rise | | High-Rise | | Other (describe) |

| # of Stories  2 Story | Exterior Walls  STUCCO/AVG | # of Units | 9 | # of Phases | 1 | # of Planned Phases | N/A |
|---|---|---|---|---|---|---|---|
| # of Elevators 0 | Roof Surface  TILE/AVG | # of Units Completed | 9 | # of Units | 9 | # o f Planned Units | N/A |
| X | Existing | | Proposed | Total # Parking  18 | # of Units For Sale | 5%+- | # of Units for Sale | 5%+- | # of Units for Sale | N/A |
| | Under Construction | Ratio (spaces/units)  2:1 | # of Units Sold | 9 | # of Units Sold | 9 | # of Units Sold | N/A |
| Year Built  1990 | Type  GARAGE | # of Units Rented | 5%+- | # of Units Rented | 5%+- | # of Units Rented | N/A |
| Effective Age  10 | Guest Parking  STREET | # of Owner Occupied Units | UNK | # of Owner Occupied Units | UNK | # of Owner Occupied Units | N/A |

| Project Primary Occupancy | X | Principal Residence | | Second Home or Recreational | | Tenant |

| Is the developer/builder in control of the Homeowners' Association (HOA)? | | Yes | X | No |

| Management Group - | X | Homeowners' Association | | Developer | | Management Agent - Provide name of management company.  RAMSEY ASSOCIATION |

| Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? | | Yes | X | No If Yes, describe |

| Was the project created by the conversion of an existing building(s) into a condominium? | | Yes | X | No If Yes, describe the original use and the date of conversion. |

PAGE 10

**PROJECT INFORMA**

Are any common elements leased to or by the Homeowners' Association? | Yes | X | No  If Yes, describe the rental terms and options.

Is the project subject to ground rent? | Yes | X | No  If Yes, $ _____ per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type? | X | Yes | | No  If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I | | did | X | did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed. CC & R'S, HOMEOWNERS ASSOCIATION RULES, CONDO BUDGET AND CONDO CONVERSION DOCUMENTS (IF APPLICABLE) WERE NOT REVIEWED. THE APPRAISER OFFERS NO OPINION REGARDING THE BUDGET.

Are there any other fees (other than regular HOA charges) for the use of the project facilities? | | Yes | X | No  If Yes, report the charges and describe. NONE NOTED

Compared to other competitive projects of similar quality and design, the subject unit charge appears | | High | X | Average | | Low  If High or Low, describe

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser? | | Yes | X | No  If Yes, describe and explain the effect on value and marketability.   NONE NOTED

Unit Charge $   150   per month X 12 = $   1,800   per year.  Annual assessment charge per year per square feet of gross living area = $ 2
Utilities included in the unit monthly assessment | X | None | | Heat | | Air Conditioning | | Electricity | | Gas | | Water | | Sewer | | Cable | | Other (describe)

**UNIT DESCRIPTION**

| Floor # 1-2 | Floors PERGO/TILE/CPT/AVG | | Fireplace(s) # | X | Refrigerator | | None |
| # of Levels 2 | Walls DRYWALL/AVG | | Woodstove(s) # | X | Range/Oven | X | Garage | Covered | Open |
| Heating Type FAU Fuel GAS | Trim/Finish WOOD/AVG | X | Deck/Patio | X | Disp | Microwave | # of Cars 2 |
| X | Central AC | Individual AC | Bath Wainscot TILE/AVG | | Porch/Balcony | X | Dishwasher | | Assigned | X | Owned |
| Other (describe) | Doors WOOD/AVG | | Other | | Washer/Dryer | Parking Space # 0 |

Finished area above grade contains:   6   Rooms   3   Bedrooms   2.5   Bath(s)   1,090   Square Feet of Gross Living Area Above Grade
Are the heating and cooling for the individual units  separately metered? | X | Yes | | No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)  SUBJECT FEATURES INCLUDE: TILE KITCHEN COUNTERS, RAISED PANEL DOORS, MIRRORED WARDROBE DOORS, CEILING FANS.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  THE SUBJECT IS IN OVERALL AVERAGE CONDITION, IS OF AVERAGE QUALITY AND HAS AVERAGE APPEAL TO THE MARKET. NO FUNCTIONAL DEPRECIATION NOTED. NO MAJOR REPAIRS/MODERNIZATION NECESSARY. TYPICAL DEPRECIATION NOTED.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? | | Yes | X | No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? | X | Yes | | No  If No, describe

**SALE HISTORY**

I | X | did | | did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research | | did | X | did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  PUBLIC RECORDS
My research | | did | X | did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  PUBLIC RECORDS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 08/13/2001 | 10/15/2008 | 12/24/2001 | 06/14/2007 |
| Price of Prior Sale/Transfer | N/A | $175,000 | $128,000 | $367,000 |

*page 2[?]*

| | | | | | | |
|---|---|---|---|---|---|---|
| Project Name and Phase | N/A 1 | N/A | | N/A | | N/A |
| Proximity to Subject | | 0.37 miles E | | 0.48 miles E | | 0.42 miles NW |
| Sale Price | $ | $ 145,000 | | $ 156,000 | | $ 125,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 128.09 sq. ft. | | $ 155.69 sq. ft. | | $ 104.34 sq. ft. |
| Data Source(s) | | PUBLIC RECORDS/MLS | | PUBLIC RECORDS/MLS | | PUBLIC RECORDS/MLS |
| Verification Source(s) | | APN # 6266-031-191 | | APN # 6266-031-162 | | APN # 6242-023-025 |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | DOC #546597 | | DOC#750777 | | DOC#232794 |
| Concessions | | CONV | | CONV | | CONV |
| Date of Sale/Time | | COE 04/15/2011 | | COE 05/31/2011 | | COE 02/11/2011 |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE |
| HOA Mo. Assessment | 150 | 240 | | 240 | | 186 |
| Common Elements and Rec. Facilities | COMMON AREAS | COMMON AREAS | | COMMON AREAS | | COMMON AREAS |
| Floor Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE |
| View | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE |
| Design (Style) | ATTACHED | ATTACHED | | ATTACHED | | ATTACHED |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE |
| Actual Age | 21 YRS | 33 YRS | | 33 YRS | | 22 YRS |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths |
| Room Count | 6 / 3 / 2.5 | 6 / 3 / 2.00 | +2,500 | 6 / 3 / 1.50 | +5,000 | 6 / 3 / 2.50 |
| Gross Living Area | 1,090 sq. ft. | 1,132 sq. ft. | | 1,002 sq. ft. | | 1,198 sq. ft. | -3,500 |
| Basement & Finished Rooms Below Grade | NONE NOTED N/A | NONE NOTED | | NONE NOTED | | NONE NOTED |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE |
| Heating/Cooling | FAU/CAC | SIMILAR | | SIMILAR | | SIMILAR |
| Energy Efficient Items | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL |
| Garage/Carport | 2 CAR GARAGE | 2 CAR GARAGE | | 2 CAR GARAGE | | 2 CAR GARAGE |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO |
| FIREPLACE | NONE | NONE | | NONE | | 1 FIREPLACE | -2,000 |
| POOL | NO POOL | COMM POOL | | COMM POOL | | NO POOL |
| DOM | | 34-HUD | | 19 | | 55-REO |
| Net Adjustment (Total) | | X + - | $ 2,500 | X + - | $ 5,000 | + X - | $ -5,500 |
| Adjusted Sale Price of Comparables | | Net Adj: 2% Gross Adj: 2% | $ 147,500 | Net Adj: 3% Gross Adj: 3% | $ 161,000 | Net Adj: -4% Gross Adj: 4% | $ 119,500 |

Summary of Sales Comparison Analysis. THE COMPARABLES USED WERE THE BEST AVAILABLE IN THE SUBJECT'S IMMEDIATE MARKET AREA. GLA ADJUSTED AT $35 PER SQFT. A FULL BATHROOM ADJUSTED AT $5,000. A FIREPLACE ADJUSTED AT $2,000.

Indicated Value by Sales Comparison Approach $ 140,000

Estimated monthly Market Rent $ N/A   X Gross Rent Multiplier   =$ N/A   Indicated Value by Income Approach (optional)

Summary of Income Approach (including support for market rent and GRM). N/A

Indicated Value by: Sales Comparison Approach $ 140,000   Income Approach (if developed) $ N/A

THIS APPRAISAL REPORT IS A SUMMARY REPORT AND IS IN COMPLIANCE WITH USPAP. THIS REPORT IS FOR CONVENTIONAL LOANS ONLY. THIS APPRAISAL REPORT HAS BEEN SIGNED ELECTRONICALLY AND IS CERTIFIED AS A LIVE SIGNATURE. THE SALES COMPARISON APPROACH HAS BEEN UTILIZED IN DETERMINING THE FINAL ESTIMATE OF VALUE AS IT BEST REFLECTS THE MARKET. CC & R'S, HOMEOWNERS ASSOCIATION RULES, CONDO BUDGET AND CONDO CONVERSION DOCUMENTS (IF APPLICABLE) WERE NOT REVIEWED. THIS REPORT IS SUBJECT TO LENDER REVIEW AND APPROVAL ALL ABOVE LISTED ITEMS

Lender/Client    WAKAI    Address   14118 ORIZABA AVENUE 7, PARAMOUNT CA 90723

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address   14118 ORIZABA AVENUE, #7 | | 13855 MCCLURE 4 | | | | | |
| and Unit #   PARAMOUNT CA 90723 | | PARAMOUNT | | | | | |
| Project Name and | N/A | N/A | | | | | |
| Phase | 1 | N/A | | | | | |
| Proximity to Subject | | 0.41 miles NW | | | | | |
| Sale Price | $ | $   150,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $    0.00   sq. ft. | $   125.00   sq. ft. | | $   sq. ft. | | $   sq. ft. | |
| Data Source(s) | | PUBLIC RECORDS/MLS | | | | | |
| Verification Source(s) | | APN # 6242-030-036 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | PENDING | | | | | |
| Concessions | | LISTING 2%+- | -3,000 | | | | |
| Date of Sale/Time | | LIST 12/20/2010 | | | | | |
| Location | AVERAGE | AVERAGE | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | | | | |
| HOA Mo. Assessment | 150 | 195 | | | | | |
| Common Elements and Rec. Facilities | COMMON AREAS | COMMON AREAS | | | | | |
| Floor Location | AVERAGE | AVERAGE | | | | | |
| View | AVERAGE | AVERAGE | | | | | |
| Design (Style) | ATTACHED | ATTACHED | | | | | |
| Quality of Construction | AVERAGE | AVERAGE | | | | | |
| Actual Age | 21 YRS | 12 YRS | | | | | |
| Condition | AVERAGE | AVERAGE | | | | | |
| Above Grade | Total | Bdrms | Baths | Total | Bdrms | Baths | Total | Bdrms | Baths | Total | Bdrms | Baths |
| Room Count | 6 | 3 | 2.5 | 6 | 3 | 2.50 | | | | | | |
| Gross Living Area | 1,090   sq. ft. | 1,200   sq. ft. | -3,500 | sq. ft. | | sq. ft. | |
| Basement & Finished Rooms Below Grade | NONE NOTED N/A | NONE NOTED | | | | | |
| Functional Utility | AVERAGE | AVERAGE | | | | | |
| Heating/Cooling | FAU/CAC | SIMILAR | | | | | |
| Energy Efficient Items | TYPICAL | TYPICAL | | | | | |
| Garage/Carport | 2 CAR GARAGE | 2 CAR GARAGE | | | | | |
| Porch/Patio/Deck | PATIO | PATIO | | | | | |
| FIREPLACE | NONE | 1 FIREPLACE | -2,000 | | | | |
| POOL | NO POOL | NO POOL | | | | | |
| DOM | | 105-REO | | | | | |
| Net Adjustment (Total) | | [ ] + [X] - | $   -8,500 | [ ] + [ ] - | $   0 | [ ] + [ ] - | $   0 |
| Adjusted Sale Price of Comparables | | Net Adj: -6%  Gross Adj : 6% | $   141,500 | Net Adj: 0%  Gross Adj: 0% | $   0 | Net Adj: 0%  Gross Adj: 0% | $   0 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE #  4 | COMPARABLE SALE #  5 | COMPARABLE SALE #  6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 08/13/2001 | 05/14/2003 | | |
| Price of Prior Sale/Transfer | N/A | $168,000 | | |
| Data Source(s) | PUBLIC RECORDS | PUBLIC RECORDS | | |
| Effective Date of Data Source(s) | 06/2011 | 06/2011 | | |

Summary of Sales Comparison Analysis.  THE COMPARABLES USED WERE THE BEST AVAILABLE IN THE SUBJECT'S IMMEDIATE MARKET AREA. THE COMPARABLES USED WERE THE BEST AVAILABLE IN THE SUBJECT'S IMMEDIATE MARKET AREA. GLA ADJUSTED AT $35 PER SQFT. A FULL BATHROOM ADJUSTED AT $5,000. A FIREPLACE ADJUSTED AT $2,000.

SALES COMPARISON ANALYSIS

page 22

statement of assumptions and limiting conditions and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

## SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

## INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

## INTENDED USER: The intended user of this appraisal report is the lender/client.

## DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.
Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as

PAGE 23

of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

## SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name    SHARI L HILL | Name |
| Company Name  VANDALAY APPRAISALS | Company Name |
| Company Address  34 WILDWHEAT | Company Address |
| IRVINE CA 92614 | |
| Telephone Number (949) 292-8771 | Telephone Number |
| Email Address  rynokel@cox.net | Email Address |
| Date of Signature and Report  06/18/2011 | Date of Signature |
| Effective Date of Appraisal  06/18/2011 | State Certification # |
| State Certification # | or State License # |
| or State License #   AL034647 | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State    CA | |
| Expiration Date of Certification or License 08/23/2012 | |

ADDRESS OF PROPERTY APPRAISED

14118 ORIZABA AVENUE

PARAMOUNT CA 90723

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection _____

it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below, if it is available, however, the appraiser must include that data in the analysis. If data sources provide all the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 9 | 6 | 5 | X | Increasing | | Stable | | Declining |
| Absorption Rate (Total Sales/Months) | 1.50 | 2.00 | 1.67 | X | Increasing | | Stable | | Declining |
| Total # of Comparable Active Listings | | | 28 | | | | | | |
| Months of Housing Supply (Total Listings/Ab. Rate) | | | 16.77 | | | | | | |
| | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | | |
| Median Comparable Sales Price | 145,000.00 | 132,000.00 | 145,000.00 | | Increasing | X | Stable | | Declining |
| Median Comparable Sales Days on Market | 78 | 12 | 34 | X | Declining | | Stable | | Increasing |
| Median Comparable List Price | | | 153,000.00 | | | | | | |
| Median Comparable Listing Days on Market | | | 352 | | | | | | |
| Median Sale Price as % of List Price | 0.95 | 0.91 | 0.95 | | Increasing | X | Stable | | Declining |
| Seller-(developer, builder, etc.) paid financial assistance prevalent? | X | Yes | | No | | Declining | X | Stable | | Increasing |

**MARKET RESEARCH & ANALYSIS**

Explain in detail seller concessions trends for the past 12 months (e.g. seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs condo fees, options, etc.)
THE SELLER CONCESSIONS APPEAR TO BE PREVALENT IN THE SUBJECT MARKET AREA. THE TREND APPEARS TO BE SOMEWHAT STABLE
AT THE TIME OF INSPECTION.

Are foreclosure sales (REO sales) a factor in the market?   X  Yes   | No   If yes, explain (including the trends in listings and sales of foreclosed properties).
AT THE TIME OF INSPECTION THERE WERE SEVERAL FLORECLOSURE SALES IN THE SUBJECT PROPERTY MARKET AREA. THIS DOES NOT
APPEAR TO HAVE AN EFFECT ON THE MARKETABILITY OF THE SUBJECT PROPERTY.

Cite data sources for above information.
MLS, REALQUEST, PUBLIC RECORDS

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales, and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
MLS AND PUBLIC RECORDS RESOURCES WERE USED TO FORMULATE THE ABOVE INFORMATION. THE SUBJECT PROPERTY MARKET AREA
APPEARS TO BE SLIGHTLY DECLINING WITH SEVERAL FORESLOSURE PROPERTIES AVAILABLE AT THE TIME OF INSPECTION

APPRAISER'S "INVENTORY ANALYSIS," "MEDIAN SALE & LIST PRICE, DOM" AND OTHER OBSERVATIONS IN THIS ADDENDUM ARE BASED ON
THE DATA SOURCE IDENTIFIED ABOVE, WHICH APPRAISER GENERALLY BELIEVES TO BE AN ACCEPTABLE SOURCE OF MARKET DATA.
HOWEVER, THE APPRAISER CANNOT VERIFY ALL OF THE INFORMATION IN THAT DATA SOURCE AND CANNOT GUARANTEE THE ACCURACY
OF SUCH DATA OR CONCLUSIONS BASED THEREON. THE APPRAISER ALSO CANNOT GUARANTEE FUTURE MARKET CONDITIONS
AFFECTING THE SUBJECT PROPERTY.

If the subject is a unit in a condominium or cooperative project, complete the following:     Project Name:   N/A

| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 1 | 1 | 0 | | Increasing | X | Stable | | Declining |
| Absorption Rate (Total Sales/Months) | 0.17 | 0.33 | 0.00 | X | Increasing | | Stable | | Declining |
| Total # of Active Comparable Listings | | | 0 | | | | | | |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | 0.00 | | | | | | |

Are foreclosures sales (REO sales) a factor in the project?   | Yes  X  No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.
AT THE TIME OF INSPECTION THERE WERE SEVERAL FORECLOSURE SALES IN THE SUBJECT PROPERTY MARKET AREA. THIS DOES NOT
APPEAR TO HAVE AN AFFECT ON THE MARKETABILITY OF THE SUBJECT PROPERTY.

**CONDO/CO.OP PROJECTS**

Summarize the above trends and address the impact on the subject unit and project.
MLS AND PUBLIC RECORDS RESOURCES WERE USED TO FORMULATE THE ABOVE INFORMATION. THE SUBJECT PROPERTY AREA MARKET
APPEARS TO BE SLIGHTLY DECLINING WITH SEVERAL FORECLOSURE PROPERTIES AVAILABLE AT THE TIME OF INSPECTION. APPRAISER'S
"INVENTORY ANALYSIS," "MEDIAN SALE & LIST PRICE, DOM" AND OTHER OBSERVATIONS IN THIS ADDENDUM ARE BASED ON THE DATA
SOURCE IDENTIFIED ABOVE, WHICH APPRAISER GENERALLY BELIEVES TO BE AN ACCEPTABLE SOURCE OF MARKET DATA. HOWEVER, THE
APPRAISER CANNOT VERIFY ALL OF THE INFORMATION IN THAT DATA SOURCE AND CANNOT GUARANTEE THE ACCURACY OF SUCH DATA

ELECTRONIC SIGNATURES ARE UTILIZED IN THIS REPORT. USPAP AND THE APPRAISAL STANDARDS BOARD STATE THAT ELECTRONICALLY AFFIXING A SIGNATURE TO A REPORT CARRIES THE SAME LEVEL OF AUTHENTICITY AND RESPONSIBILITY AS AN INK SIGNATURE ON A PAPER COPY REPORT (THE TERM "WRITTEN RECORDS" INCLUDES INFORMATION STORED ON ELECTRIC, MAGNETIC OR OTHER MEDIA). ALL ELECTRONIC SIGNATURES IN THIS REPORT HAVE A SECURITY FEATURE MAINTAINED BY INDIVIDUAL PASSWORDS FOR EACH SIGNING APPRAISER. NO PERSON CAN ALTER THE APPRAISAL WIT THE EXCEPTION OF THE ORIGINAL SIGNING APPRAISER(S).

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL TO ASCERTAIN MARKET VALUE, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

NEIGHBORHOOD DESCRIPTION
SUBJECT NEIGHBORHOOD HAS AVERAGE ACCESS TO EMPLOYMENT AND ALL SUPPORT SERVICES (SHOPPING, SCHOOLS, POLICE/FIRE, AND RECREATIONAL FACILITIES). AREA HAS AVERAGE EMPLOYMENT STABILITY, AND OVERALL AVERAGE APPEAL TO THE MARKETPLACE. NO SIGNIFICANT NEGATIVE FACTORS THAT AFFECT THE MARKETABILITY OF THE PROPERTIES IN THE NEIGHBORHOOD WERE NOTED.

NEIGHBORHOOD MARKET CONDITIONS
SUBJECT NEIGHBORHOOD APPEARS TO BE STABLE MARKET VALUES AND SUPPLY/DEMAND. MARKETING TIMES FOR PROPERLY PRICED PROPERTIES APPEARS TO BE 3-6 MONTHS. SALES FINANCING IS TYPICALLY CONVENTIONAL IN NATURE. CONCESSIONS, BUY DOWNS AND DISCOUNTS ARE NOT COMMONPLACE IN THE AREA. CONCESSIONS ARE BEING OFFERED ON AN INDIVIDUAL BASIS.

CONDITIONS OF APPRAISAL
NO CONDITIONS. NO WARRANTY OF PROPERTY IS GIVEN OR IMPLIED. NO LIABILITY IS ASSUMED FOR THE STRUCTURAL OR MECHANICAL ELEMENTS OF THE PROPERTY. COMPLETE APPRAISAL, SUMMARY APPRAISAL REPORT.

ADDITIONAL COMMENTS
IT IS NOTED THAT NO PERSONAL PROPERTY WAS CONSIDERED IN THE OPINION OF VALUE.

LEGAL DESCRIPTION:
ASSESSOR'S PARCEL NUMBER:
IT IS NOTED THAT THE SUBJECT LEGAL AND APN WERE TAKEN FROM REALQUEST, A PRIVATE DATA SOURCE.

TOTAL NUMBER OF ACTIVE LISTINGS ON THE 1004MC AND TOP OF PAGE 3 WILL VARY AS PENDING SALES ARE NOT INCLUDED IN THE ACTIVE LISTING VALUES ON PAGE 3.

AT THE TIME OF INSPECTION, NO STANDARD COMPARABLE CLOSED SALE WAS AVAILABLE IN THE SUBJECT MARKET AREA WITH IN THE PAST SIX MONTHS AND UNDER ONE MILE.

PER AGENT, SUBJECT PROPERTY HAS PLUMBING ISSUES. HOA IS WORKING WITH SHEA HOMES TO FIX PLUMBING AT THEIR EXPENSE.

APPRAISER HAS NOT PERFORMED ANY SERVICE ON THE SUBJECT IN THE PAST 36 MONTHS.

I CERTIFY, AS THE APPRAISER, THAT I HAVE COMPLIED WITH THE HOME VALUATION CODE OF CONDUCT IN ALL ASPECTS OF THE APPRAISAL PROCESS.

# SKETCH/AREA TABLE ADDENDUM

Property Address
City _____ State _____ Zip
Borrower
Lender/Client
Appraiser Name



Comments:

Scale: 1 = 12

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Totals |
| GLA1 | First Floor | 450.00 | 450.00 |
| GLA2 | Second Floor | 640.00 | 640.00 |
| GLA | Garage | 200.00 | 200.00 |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 10.0 x 18.0 | 180.00 |
| 15.0 x 15.0 | 225.00 |
| 5.0 x 9.0 | 45.00 |
| Second Floor | |
| 23.0 x 25.0 | 500.00 |
| 3.0 x 15.0 | 45.00 |
| 5.0 x 9.0 | 45.00 |

**Comp 4**
13855 MCCLURE 4
PARAMOUNT
Sale: $150,000

**Comp 3**
13919 ARTHUR AVENUE 12
PARAMOUNT
Sale: $126,000

**Comp 2**
8048 ELBURG STREET B
PARAMOUNT
Sale: $146,000

**Subject**
14119 ORIZABA AVENUE
PARAMOUNT, CA 90723
APN: 6255-013-046

**Comp 1**
8510 ELBURG STREET D
PARAMOUNT
Sale: $146,000



**FRONT OF
SUBJECT PROPERTY**
14118 ORIZABA AVENUE
PARAMOUNT CA 90723



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

**LIVING ROOM**



**DINING**



**KITCHEN**





BEDROOM 1

BEDROOM 2



**BATHROOM 1**

**BATHROOM 2**





**COMPARABLE SALE #**   1
8510 ELBURG STREET D
PARAMOUNT



**COMPARABLE SALE #**   2
8548 ELBURG STREET B
PARAMOUNT



**COMPARABLE SALE #**   3
13919 ARTHUR AVENUE 12
PARAMOUNT



**COMPARABLE SALE #**    4

13855 MCCLURE 4
PARAMOUNT

**COMPARABLE SALE #**    5

**COMPARABLE SALE #**    6

OFFICE OF REAL ESTATE APPRAISERS

REAL ESTATE APPRAISER LICENSE

SHARI L. HILL

has successfully met the requirements for licensing as a real estate appraiser in the State of
California and is, therefore, entitled to use the title "Real Estate Appraiser".

This license has been issued in accordance with the provisions of the Real Estate Appraisers
Licensing and Certification Law.

OREA APPRAISER IDENTIFICATION NUMBER   AL034647

Date Issued:   August 24, 2010
Date Expires:   August 23, 2012

Director, OREA

License No. 122213

PAGE 37



**GENERAL STAR NATIONAL INSURANCE COMPANY**
Financial Centre
P.O. Box 10360
Stamford, Connecticut 06904-2360

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number:   NJA942654D                    Renewal of Number:    NJA942654C

1. **NAMED INSURED:**          Shari Hill
   **STREET ADDRESS:**         34 Wildwheat
                               Irvine, CA 92614

2. **POLICY PERIOD:**  Inception Date: 08/23/2010              Expiration Date:        08/23/2011

   Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3. **LIMIT OF LIABILITY:**
   Each Claim:          $ 1,000,000
   Aggregate:           $ 1,000,000
   Claim Expenses have a separate Limit of Liability:
   Each Claim:          $ 1,000,000
   Aggregate:           $ 1,000,000

4. **DEDUCTIBLE:**        Each Claim: $500.00      Aggregate: $1,000.00

5. **RETROACTIVE DATE:** 08/23/2006

   If a date is indicated, this policy will not provide coverage for any Claim arising out of any act, error,
   omission or personal injury which occurred before such date.

6. **ANNUAL PREMIUM:**        $  850.00

7. **ENDORSEMENTS:**
   This policy is made and accepted subject to the printed policy form together with the following form(s) or
   endorsement(s).
   GSN-07-AP-122(07/2007)
   GSN-07-AP-375 (10/2007)

8. **MANAGING AGENT**
   Herbert H. Landy Insurance Agency, Inc.
   75 Second Avenue, Suite 410

   Needham, Massachusetts  02494-2876

   _Betsy a Thompson_
   _____
   Authorized Representative

# EXHIBIT 4

B6A (Official Form 6A) (12/07)

In re  **Tsutomu Wakai**                                          Case No.  **2:11-bk-17014-VZ**
                              Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. **List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 1083 sq ft 3 bedroom, 2 bathroom Condo Valuation www.redfin.com Location: 14118 Orizaba Avenue #7, Paramount CA 90723 | **Fee Owners** | - | **145,000.00** | **314,837.20** |

|  | Sub-Total > | **145,000.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **145,000.00** |  |

____0____  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT 5

25
26

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Filer's Name: | Oscar M. Leus, Esq. | Atty Name (if applicable): Oscar M. Leus, Esq. |
| Street Address: | 23517 South Main Street Suite #107 Carson, CA 90745 | CA Bar No. (if applicable): 157650 |
| Filer's Telephone No.: | 310-835-8259 | Atty Fax No. (if applicable): 310-835-0538 |

| | |
|---|---|
| In re: Tsutomu Wakai | Case No. 2:11-bk-17014-VZ Chapter 13 |

## AMENDED SCHEDULE(S) AND/OR STATEMENT(S)

A filing fee of $26.00 is required to amend any or all of Schedules "D" through "F." An addendum mailing list is also required as an attachment if creditors are being added to the creditors list. Is/are creditor(s) being added? ☐ Yes  ☒ No

Indicate below which schedule(s) and/or statement(s) is(are) being amended.

☐ A  ☐ B  ☐ C  ☐ D  ☐ E  ☐ F  ☐ G  ☐ H  ☐ I  ☐ J

☐ Statement of Social Security Number(s)  ☐ Statement of Financial Affairs
☐ Statement of Intention  ☒ Other-Chapter 13 Plan

**NOTE:** IT IS THE RESPONSIBILITY OF THE DEBTOR TO MAIL COPIES OF ALL AMENDMENTS TO THE TRUSTEE AND TO NOTICE ALL CREDITORS LISTED IN THE AMENDED SCHEDULE(S) AND TO COMPLETE AND FILE WITH THE COURT THE PROOF OF SERVICE ATTACHED.

I/We, Tsutomu Wakai, the person(s) who subscribed to the foregoing Amended Schedule(s) and/or Statement(s) do hereby declare under penalty of perjury that the foregoing is true and correct.

DATED: 7/1/2011

Tsutomu Wakai
*Debtor Signature*

_____

*Co-Debtor Signature*

**\*\*FOR COURT USE ONLY\*\***

FILED
JUL 0 7 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                Deputy Clerk

**\*\*SEE PROOF OF SERVICE\*\***

## PROOF OF SERVICE

I hereby certify that a copy of the Amendment(s) was(were) mailed to the Trustee and that notice was given to the additional creditors listed.

DATED: ___7/5/2011___

Oscar M. Leus, Esq.
Print or Type Name

_____
Signature

(SEE ATTACHED MAILING LIST.)


BIANA HAMADY
Shermeta, Adams & Von Allmen, P.C.
Agents for JP Morgan Chase Bank, N.A.
P O Box 80908
Rochester Hills, MI 48308


Nancy K. Curry
Chapter 13 Trustee
606 S  Olive Street
Suite 950
Los Angeles, CA 90014


United States Trustee (LA)
725 S Figueroa Street
26th floor
Los Angeles, CA 90017


Wells Fargo Home Mortgage
P O Box 10335
Des Moines, IA 50306

Page 41

Name        Oscar M. Leus, Esq.
Address     Oscar M. Leus Law Corporation
            23517 S Main Street
            Suite #107
            Carson, CA 90745
Telephone   310-835-8259        (FAX)   310-835-0538
Email Address   attyleus@yahoo.com

☒ Attorney for Debtor
State Bar No.  157650

☐ Debtor(s) in Pro Se        (Any reference to the singular shall include the plural in the case of joint debtors.)

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | |
| List all names (including trade names) used by the debtor within the last 8 years:<br>    **Tsutomu Wakai** | Chapter 13 Case No. 2:11-bk-17014-VZ<br><br>**FIRST AMENDED<br>CHAPTER 13 PLAN**<br><br>**CREDITORS MEETING:**<br>Date:     6/24/11<br>Time:     9:00 A.M.<br>Place:    725 S Figueroa Street, Los Angeles, CA 90017<br>**CONFIRMATION HEARING:**<br>Date:     2/13/12<br>Time:     9:00 A.M.<br>Place:    255 E. Temple Street<br>          Courtroom #1368<br>          Los Angeles, CA 90012 |

## NOTICE

This Chapter 13 Plan is proposed by the above Debtor. The Debtor attests that the information stated in this Plan is accurate. Creditors cannot vote on this Plan. However, creditors may object to this Plan being confirmed pursuant to 11 U.S.C. § 1324. Any objection must be in writing and must be filed with the court and served upon the Debtor, Debtor's attorney (if any), and the Chapter 13 Trustee not less than 7 days before the date set for the meeting of creditors. Unless an objection is filed and served, the court may confirm this Plan. The Plan, if confirmed, modifies the rights and duties of the Debtor and creditors to the treatment provided in the Plan as confirmed, with the following IMPORTANT EXCEPTIONS:

Unless otherwise provided by law, each creditor will retain its lien until the earlier of payment of the underlying debt determined under non-bankruptcy law or discharge under 11 U.S.C.§1328. If the case under this chapter is dismissed or converted without completion of the Plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law.

Defaults will be cured using the interest rate set forth below in the Plan. Any ongoing obligation will be paid according to the terms of the Plan.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised December 2009                                                              **F3015-1.1**

PAGE 42

**HOLDERS OF SECURED CLAIMS AND CLASS 1 CLAIMANTS WILL BE PAID ACCORDING TO THIS PLAN AFTER CONFIRMATION UNLESS THE SECURED CREDITOR OR CLASS 1 CLAIMANT FILES A PROOF OF CLAIM IN A DIFFERENT AMOUNT THAN THAT PROVIDED IN THE PLAN.** If a secured creditor or a class 1 creditor files a proof of claim, that creditor will be paid according to that creditor's proof of claim, unless the court orders otherwise.

**HOLDERS OF ALL OTHER CLAIMS MUST TIMELY FILE PROOFS OF CLAIMS, IF THE CODE SO REQUIRES, OR THEY WILL NOT BE PAID ANY AMOUNT.** A Debtor who confirms a Plan may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

The Debtor proposes the following Plan and makes the following declarations:

I.    **PROPERTY AND FUTURE EARNINGS OR INCOME SUBJECT TO THE SUPERVISION AND CONTROL OF THE CHAPTER 13 TRUSTEE:**

The Debtor submits the following to the supervision and control of the Chapter 13 Trustee:

A.    Payments by Debtor of **$100.00** per month for **60** months. This monthly Plan Payment will begin within 30 days of the date the petition was filed.

B.    The base plan amount is **$ 6,000.00** which is estimated to pay **4** % of the allowed claims of nonpriority unsecured creditors. If that percentage is less than 100%, the Debtor will pay the Plan Payment stated in this Plan for the full term of the Plan or until the base plan amount is paid in full, and the Chapter 13 Trustee may increase the percentage to be paid to creditors accordingly.

C.    Amounts necessary for the payment of post-petition claims allowed under 11 U.S.C. § 1305.

D.    Preconfirmation adequate protection payments for any creditor who holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in the plan. Preconfirmation adequate protection payments and preconfirmation lease payments will be paid to the Chapter 13 Trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
| -NONE- | | | |

Each adequate protection payment or preconfirmation lease payment will commence on or before the 30th day from the date of filing of the case. The Chapter 13 Trustee shall deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from the Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured(s) creditor(s) at the next available disbursement or as soon as practicable after the payment is received and posted to the Chapter 13 Trustee's account. The Chapter 13 Trustee will take his or her statutory fee on all disbursements made for preconfirmation adequate protection payments or preconfirmation lease payments.

E.    Other property: (specify property or indicate none)
NONE

**F3015-1.1**

PAGE 43

II.   **ORDER OF PAYMENTS; CLASSIFICATION AND TREATMENT OF CLAIMS:**
Except as otherwise provided in the plan or by court order, the Chapter 13 Trustee shall disburse all available funds for the payment of claims as follows:

A.   ORDER OF PAYMENTS:

1.   If there are Domestic Support Obligations, the order of priority shall be:

(a)   Domestic Support Obligations and the Chapter 13 Trustee's fee not exceeding the amount accrued on payments made to date;

(b)   Administrative expenses (Class 1(a)) in an amount not exceeding _____% of each Plan Payment until paid in full;

2.   If there are no Domestic Support Obligations, the order of priority shall be the Chapter 13 Trustee's fee not exceeding the amount accrued on payments made to date, and administrative expenses (Class 1(a)) in an amount not exceeding __% of each Plan Payment until paid in full.

3.   Notwithstanding 1 and 2 above, ongoing payments on secured debts that are to be made by the Chapter 13 Trustee from the Plan Payment; such secured debt may be paid by the Chapter 13 Trustee commencing with the inception of Plan Payments.

4.   Subject to 1, 2, and 3 above, pro rata to all other claims except as otherwise provided in the Plan.

5.   No payment shall be made on nonpriority unsecured claims until all secured and priority claims have been paid in full.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised December 2009                                                                    **F3015-1.1**

PAGE 44

Chapter 13 Plan  (Rev. 12/09) - Page 4                     2009 USBC, Central District of California

B.   CLASSIFICATION AND TREATMENT OF CLAIMS:

| CLASS 1 | | | | | |
|---|---|---|---|---|---|
| **ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507** | | | | | |
| The Debtor will pay Class 1 claims in full; except the debtor may provide for less than full payment of Domestic Support Obligations pursuant to 11 U.S.C. §1322(a)(4). | | | | | |
| | | | | | |
| (1)  Chapter 13 Trustee's Fee – estimated at 11% of all payments to be made to all classes through this Plan. | | | | | |
| (2)  Attorney's Fees | $500.00 | | $83.33 | 6 | $500.00 |
| (3)  Chapter 7 Trustee's Fees | | | | | |
| (4)  Other | | | | | |
| | | | | | |
| (1)  Internal Revenue Service | | | | | |
| (2)  Franchise Tax Board | | | | | |
| (3)  Domestic Support Obligation | | | | | |
| (4)  Other | | | | | |
| | | | | | |
| | | | | | |

*Revised December 2009*                                              **F3015-1.1**

PAGE 45

Chapter 13 Plan  (Rev. 12/09) - Page 5          2009 USBC, Central District of California

| CLASS 2 |
|---|

### CLAIMS SECURED SOLELY BY PROPERTY THAT IS THE DEBTOR'S PRINCIPAL RESIDENCE ON WHICH OBLIGATION MATURES <u>AFTER</u> THE FINAL PLAN PAYMENT IS DUE

1. ☐    The post-confirmation monthly mortgage payment will be made by the Chapter 13 Trustee from the Plan Payment to:

2. ☒    The post-confirmation monthly mortgage payment will be made by the Debtor directly to:

**Wells Fargo Home Mortgage**
_____          _____
        (name of creditor)                             (last 4 digits of account number)

**The Debtor will cure all prepetition arrearages for the primary residence through the Plan Payment as set forth below.**

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

| CLASS 3 |
|---|

### CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE PAID IN FULL DURING THE TERM OF THE PLAN

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised December 2009                              **F3015-1.1**

Chapter 13 Plan  (Rev. 12/09) - Page 6                                    2009 USBC, Central District of California

## CLASS 4

### OTHER SECURED CLAIMS ON WHICH THE LAST PAYMENT IS DUE AFTER THE DATE ON WHICH THE FINAL PAYMENT UNDER THE PLAN IS DUE

1. ☐   The post-confirmation monthly payment pursuant to the promissory note will be made by the Chapter 13 Trustee from the Plan Payment to:

2. ☐   The post-confirmation monthly payment pursuant to the promissory note will be made by the Debtor directly to:

_____              _____
        (name of creditor)                              (last 4 digits of account number)

_____              _____
        (name of creditor)                              (last 4 digits of account number)

**The Debtor will cure all prepetition arrearages on these claims through the Plan Payment as set forth below.**

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

## CLASS 5

### NON-PRIORITY UNSECURED CLAIMS

Debtor estimates that non-priority unsecured claims total the sum of  **$119,000.00** .
Class 5 claims will be paid as follows:

(Check one box only.)

☒      Class 5 claims (including allowed unsecured amounts from Class 3) are of one class and will be paid pro rata.

OR

☐      Class 5 claims will be divided into subclasses as shown ~~on the attached exhibit~~ *directly below* (which also shows the justification for the differentiation among the subclasses) and the creditors in each subclass will be paid pro rata.

## III.   COMPARISON WITH CHAPTER 7

The value as of the effective date of the Plan of property to be distributed under the Plan on account of each allowed claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. The amount distributed to nonpriority unsecured creditors in chapter 7 would be $ **0.00** which is estimated to pay **0** % of the scheduled nonpriority unsecured debt.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised December 2009*                                           **F3015-1.1**

PAGE 47

Chapter 13 Plan  (Rev. 12/09) - Page 7                                    2009 USBC, Central District of California

## IV.  PLAN ANALYSIS

| | |
|---|---|
| CLASS 1a | $500.00 |
| CLASS 1b | $0.00 |
| CLASS 1c | $0.00 |
| CLASS 2 | $0.00 |
| CLASS 3 | $0.00 |
| CLASS 4 | $0.00 |
| CLASS 5 | $4,905.40 |
| SUB-TOTAL | $5,405.40 |
| CHAPTER 13 TRUSTEE'S FEE (Estimated  11% unless advised otherwise) | $594.60 |

## V.  OTHER PROVISIONS

A.  The Debtor rejects the following executory contracts and unexpired leases.
   Name of Other Party:                    Description of contract/lease:
   -NONE-

B.  The Debtor assumes the executory contracts or unexpired leases set forth in this section. As to each contract or lease assumed, any defaults therein and Debtor's proposal for cure of said default(s) is described in Class 4 of this Plan. The Debtor has a leasehold interest in personal property and will make all post-petition payments directly to the lessor(s):
   Name of Other Party:                    Description of contract/lease:
   -NONE-

C.  In addition to the payments specified in Class 2 and Class 4, the Debtor will make regular payments, including any preconfirmation payments, directly to the following:
   Creditor Name:                          Monthly Payment:
   -NONE-

D.  The Debtor hereby surrenders the following personal or real property. (Identify property and creditor to which it is surrendered.)
   Creditor Name:                          Description:
   -NONE-

E.  The Debtor shall incur no debt greater than $500.00 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

F.  Miscellaneous provisions: (Use Attachment, if necessary)
   Chase Home Loans: Debtor(s) intend to avoid lien.

G.  The Chapter 13 Trustee is authorized to disburse funds after the date confirmation is announced in open court.

H.  The Debtor will pay timely all post-confirmation tax liabilities directly to the appropriate taxing authorities as they come due.

I.   The Debtor will pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the petition.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised December 2009                                                F3015-1.1

PAGE 48

2009 USBC, Central District of California

Chapter 13 Plan  (Rev. 12/09) - Page 8

## VI.    REVESTING OF PROPERTY

Property of the estate shall not revest in the Debtor until such time as a discharge is granted or the case is dismissed or closed without discharge. Revestment shall be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate shall vest in accordance with applicable law. After confirmation of the Plan, the Chapter 13 Trustee shall have no further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the Local Bankruptcy Rules. Prior to any discharge or dismissal, the Debtor must seek approval of the court to purchase, sell, or refinance real property.

Dated:  6/30/2011

Oscar M. Leus, Esq.
157650
Attorney for Debtor(s)

Tsutomu Wakai
Debtor

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

F3015-1.1

Revised December 2009

PAGE 49